UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| 7E FIT SPA LICENSING GROUP LLC, | ) | |
| 7E HOLDINGS 1 LLC, and | ) | |
| 7E LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | 1:15-cv-01111-RLY-MPB |
| | ) | |
| vs. | ) | |
| | ) | |
| SUSAN  DIER, | ) | |
| 7EFS OF WHEATRIDGE LLC, d/b/a THE | ) | |
| FULL BODY SHOP d/b/a MED SPA, and | ) | |
| SPECTRUM MEDSPA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SUSAN DIER GRAF, | ) | |
| 7EFS OF WHEATRIDGE LLC, and | ) | |
| THE FULL BODY SHOP, d/b/a MEDSPA, | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 7E FIT SPA LICENSING GROUP LLC, | ) | |
| 7E HOLDINGS 1 LLC, and | ) | |
| 7E LLC, | ) | |
| | ) | |
| Counter Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SUSAN DIER GRAF, | ) | |
| 7EFS OF WHEATRIDGE LLC, and | ) | |
| THE FULL BODY SHOP, d/b/a MEDSPA, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |

1

```
                                                )
STEVE  NIELSEN,                                 )
                                                )
            Third Party Defendant.
```

## ENTRY ON COUNTERCLAIM DEFENDANTS' AND THIRD PARTY DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM AND THIRD PARTY COMPLAINT

Susan Dier Graf, [1] a Colorado resident, wanted to open a 7E Fit Spa in Wheat Ridge, Colorado.  After speaking with Third Party Defendant, Steve Nielsen, she decided the business venture was worth the risk.  She therefore entered into three agreements with the Plaintiffs/Counterclaim Defendants, 7E Fit Spa Licensing Group LLC ("7E Licensing"), 7E Holdings 1 LLC ("7E Holdings"), and 7E LLC (collectively "Counterclaim Defendants").  The agreements created 7EFS of Wheatridge LLC and granted Wheatridge, among other things, a license to use the 7E marks in connection with the products and services offered in Dier Graf's 7E Fit Spa.  After a difficult year in business together, the business relationship ended, Dier Graf opened The Full Body Spa d/b/a Medspa, and this lawsuit followed.

Counterclaim Defendants' Second Amended Complaint brings claims for declaratory judgment that Defendants/Counterclaim Plaintiffs/Third Party Plaintiffs ("Counterclaim Plaintiffs") have engaged in trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  They also bring a state

---

[1] According to Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs, the Plaintiffs/Counterclaim Defendants/Third Party Defendant improperly named and served Susan Dier Graf as Susan Dier.  They also improperly named the business; it should be named The Fully Body Shop, d/b/a Medspa, not Spectrum Medspa.

law claim under the Indiana Crime Victims Act, Ind. Code § 34-24-3-1, as well as claims for breach of contract, tortious interference with a business relationship, and breach of fiduciary duties.  The Counterclaim Plaintiffs responded with fourteen counterclaims, including claims for declaratory judgment that Counterclaim Plaintiffs have not infringed any 7E FIT SPA™ marks or engaged in unfair competition under the Lanham Act and the Indiana Trademark Act, and to further declare that Counterclaim Defendants and Mr. Nielsen have engaged in the unlawful offer and sale of franchises to Counterclaim Plaintiffs under the Indiana Franchise Act ("IFA"), Ind. Code § 23-2-2.5-1 *et seq.* Counterclaim Plaintiffs further seek equitable relief and damages under the IFA and the Indiana Deceptive Franchise Practices Act ("IDFPA"), Ind. Code § 23-2-2.7-1 *et seq.* And lastly, Counterclaim Plaintiffs bring a multitude of state law claims including breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, promissory estoppel, and fraud.

The Counterclaim Defendants and Mr. Nielsen move to dismiss all fourteen counterclaims.  For the reasons explained below, the court **GRANTS in part** and **DENIES in part** the Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Counterclaim and Third Party Complaint.

## I.    Background

Mr. Nielsen is the managing member of both 7E Licensing and 7E Holdings. (Filing No. 19-1, License Agreement at 27; Filing No. 19-2, Operating Agreement at 25). The Counterclaim is silent with respect to Mr. Nielsen's involvement in 7E LLC.  The Amended Complaint alleges, however, that 7E LLC is the owner of multiple registered

3

and unregistered trademarks, including 7E FIT SPA™.  (Filing No. 56, Second Am. Compl. ¶ 7).  The 7E marks are used in connection with health spas located in Indiana, Colorado, California, Connecticut, and Oklahoma.  (Filing No. 19, Counterclaim ¶ 36).

In the fall of 2013, Dier Graf approached Mr. Nielsen to discuss her desire to open a 7E Fit Spa in Colorado.  (*Id.* ¶ 87).  According to the Counterclaim, Mr. Nielsen and the Counterclaim Defendants represented that in the first three months, a 7E Fit Spa would exceed $20,000 in income per month and over $7,000 a month in net profit.  (*Id.* ¶ 88). In reliance on those representations and with the assistance of Mr. Nielsen, Dier Graf decided to open a 7E Fit Spa in Wheat Ridge, Colorado.  (*Id.* ¶¶ 13, 90-93).

On April 1, 2014, she entered into three agreements with the Counterclaim Defendants.  First, the parties entered into an Operating Agreement which formed Wheatridge as a limited liability company and showed its principal place of business as 2000 E. 116th Street, Carmel, Indiana 46032.  (*Id.* ¶ 29; Operating Agreement §§1.1, 1.6).  The Operating Agreement made 7E Holdings a majority member (51%) and Dier Graf a minority member (49%) and also made Mr. Nielsen and Dier Graf managers of Wheatridge.  (Counterclaim ¶¶ 25-27; Operating Agreement §§ 2.1, 5.2).

Second, 7E Licensing and Wheatridge entered into a Licensing Agreement.  The Licensing Agreement represented that 7E Licensing is the owner of the trademark 7E FIT SPA™.  (Licensing Agreement, Recitals).  Under the terms of the Agreement, 7E Licensing granted Wheatridge a license to use the trade name, service mark, and trademark 7E FIT SPA™ and other intellectual property of 7E Licensing in connection with Dier Graf's 7E Fit Spa to be operated in Wheat Ridge, Colorado.  (Counterclaim ¶

4

13; *see generally* Licensing Agreement).  The Licensing Agreement required Wheatridge

to pay a royalty fee of 6% of the Spa's gross sales to 7E Licensing.  (Counterclaim ¶ 16;

Licensing Agreement § 2.2 and Ex. C).  The Licensing Agreement also granted

Wheatridge a certain "licensed territory" limited exclusively to a four mile radius from

the "Licensed Location."  (Counterclaim ¶ 17; Licensing Agreement, Ex. D).  And it

referred to a potential Franchise Agreement "under the same or substantially similar

terms as provided herein in the event that Franchise opportunities become available."

(Counterclaim ¶ 18a.; Licensing Agreement, Recital and ¶¶ 1.2, 1.7, 16.10).

Lastly, 7E LLC and Dier Graf/Wheatridge entered into a 7E Equipment Lease

Agreement for the lease of two 7E Torc Plus Systems, one 7E UltraBeauty System, and

one 7E SkinLite System.  (Counterclaim ¶ 31; Filing No. 19-3, 7E Equipment Lease

Agreement at 1).  Lease payments were made to 7E LLC in San Diego, California.

(Lease Agreement at 1).

In addition, as an operator of a 7E Fit Spa, Dier Graf was required to use and pay a

fee for a MINDBODY computer software program licensed to 7E Fit Spa Corporate in

Carmel, Indiana.  (Counterclaim ¶ 39).  According to the Counterclaim, the computer

program is a repository for financial data, accounts receivable, client scheduling,

employee scheduling, and payroll for the 7E Fit Spa locations nationwide.  (*Id.*).

Essentially, it acted as a database where Corporate could monitor the various 7E Fit Spa

locations regarding financial information, product purchasing, and marketing materials.

(*Id.* ¶ 40).

Furthermore, Corporate made advertising decisions and designs for the 7E Fit Spa locations, including Dier Graf's Wheat Ridge location, and charged a fee.  (*Id.* ¶¶ 42-43). Corporate also (1) required all 7E locations to use a similar design layout, interior decorating, and arrangements in the stores, (*id.* ¶¶ 46-48); (2) required all locations to purchase specific products from manufacturers and/or distributors, (*id.* ¶ 45); (3) required all locations to pay a royalty fee (*id.* ¶ 19 c.); and (4) required all 7E Fit Spa employees to dress similarly, (*id.* ¶¶ 42-49).

Despite the representations of Mr. Nielsen and the other Counterclaim Defendants, Dier Graf's 7E Fit Spa never generated the profits promised by Mr. Nielsen.  (*Id.* ¶ 99).

On April 24, 2015, Corporate terminated Dier Graf's access to the MINDBODY software.  (*Id.* ¶ 61).  That evening, Mr. Nielsen conveyed to Dier Graf a fifteen (15) day notice of termination.  (*Id.* ¶ 64).  Dier Graf alleges that as of April 24, 2015, she has not used the 7E FIT SPA™ marks nor has she conducted business associated with any of the 7E FIT SPA™ name or marks.  (Counterclaim ¶¶ 66, 71(1)).  Furthermore, Dier Graf has learned that the trademark 7E FIT SPA™ is owned by 7e LLC in San Diego, CA.  (*Id.* ¶¶ 97, 99).

Dier Graf now runs a business called The Full Body Shop d/b/a Medspa.  (Second Am. Compl. ¶ 23).  It is also located in Wheat Ridge, Colorado.  (Counterclaim ¶ 4).

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims asserted in a counterclaim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test the legal

6

sufficiency of the counterclaim, not the merits of the lawsuit.  *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).  A court may grant a Rule 12(b)(6) motion to dismiss only if the counterclaim lacks "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A counterclaim sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Id*. at 555.  The court accepts all well-pleaded factual allegations in the counterclaim as true and draws all reasonable inferences in favor of the counterclaim plaintiff.  *See Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990); *Rene v. G.F. Fishers, Inc*., No. 1:11-cv-514-WTL-TAB, 2012 WL 5207612, at *1 (S.D. Ind. Oct. 22, 2012) (applying Rule 12(b)(6) standard to counterclaim).

## III.   Discussion

The fourteen counterclaims are brought against all Counterclaim Defendants and Mr. Nielsen.  This was error.  Therefore, in their Response Brief, the Counterclaim Plaintiffs make the following concessions:

- Medspa's claims against the Counterclaim Defendants and Mr. Nielsen asserted in Counts II-XIV should be dismissed.

- Dier Graf and Wheatridge's claims against the Counterclaim Defendants and Mr. Nielsen asserted in Counts II-X[2] should be dismissed as to 7E LLC and Mr. Nielsen.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Count XI should be dismissed as to 7E Licensing and 7E LLC.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Counts XII-XIII should be dismissed as to 7E LLC.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Counts XIV should be dismissed as to 7E Licensing and 7E LLC.

In light of these concessions:

- Medspa's claims against the Counterclaim Defendants and Mr. Nielsen asserted in Counts II-XIV are dismissed.

- Dier Graf and Wheatridge's claims against the Counterclaim Defendants and Mr. Nielsen asserted in Counts II-X are dismissed as to 7E LLC and Mr. Nielsen.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Count XI are dismissed as to 7E Licensing and 7E LLC.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Counts XII-XIII are dismissed as to 7E LLC.

---

[2] Briefly, Counts II-IV are brought under the IFA; Count V is brought under the IDFPA; Counts VI and VII allege breach of the covenant of good faith and fair dealing and breach of the implied covenant of good faith and fair dealing; Count XIII alleges unjust enrichment; Count IX alleges promissory estoppel; and Count X alleges tortious interference with business relations; Count XI alleges breach of fiduciary duty; and Counts XII-XIV allege claims for fraud, fraud-in-the-inducement and constructive fraud.

- Dier Graf and Wheatridge's claims against the Counterdefendants and Mr. Nielsen asserted in Counts XIV are dismissed as to 7E Licensing and 7E LLC.

The court now turns to the merits of the Counterclaim Plaintiffs' counterclaims against the remaining parties.

### A.   Count I for Declaratory Judgment of Non-Infringement

Count I is a request for declaratory judgment of non-infringement—i.e., that the Counterclaim Plaintiffs have not infringed the Counterclaim Defendants' and Mr. Nielsen's rights under the Lanham Act, the Indiana Trademark Act, or common law. Counterclaim Defendants move to dismiss Count I because, they argue, it is not a claim, but rather a type of relief to which the Counterclaim Plaintiffs would be entitled should they successfully defend against the trademark infringement action alleged in the Second Amended Complaint.

The Declaratory Judgment Act provides, in pertinent part, that a court "*may* declare the rights and other legal relations of any interested parties seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Federal courts thus "have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). In determining whether to grant a declaratory judgment, the court should consider matters of practicality and wise judicial administration. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). For example, the court should consider "whether a declaratory judgment action will settle the particular controversy and clarify the legal

9

relations in issue." *NUCOR v. Aceros & Maquilas de Occidente*, 28 F.3d 572, 579 (7th

Cir. 1994) (quoting *Sears, Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*, 372 F.2d 435, 438

(7th Cir. 1967)).  And the court should also consider whether the declaratory judgment

action would serve a useful purpose.  *Id.*

Here, the Counterclaim Defendants allege the Counterclaim Plaintiffs are

engaging in trademark infringement by using the 7E trademarks, products, and services to

former 7E customers in their new business, Medspa.  (Second Am. Compl. ¶ 24).  They

seek both a declaratory judgment of infringement and damages.  Counterclaim Plaintiffs

deny infringement.  (Filing No. 19, Answer ¶ 24).  In fact, they allege in their

Counterclaim that they have "ceased using any of the 7E FIT SPA™ name and marks,"

and do not associate their business with the 7E FIT SPA™ name and marks.

(Counterclaim ¶ 66).  In addition to a declaratory judgment, they seeks costs and attorney

fees incurred in these proceedings.  (*Id.* ¶ 71(2)).

"Where the substantive suit would resolve the issues raised by the declaratory

judgment action, the declaratory judgment action 'serves no useful purpose' because the

controversy has 'ripened' and the uncertainty and anticipation of litigation are

alleviated." *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065

(N.D. Ill. 2013) (internal citations and quotations omitted) (collecting cases).  The court

finds the Counterclaim Plaintiffs' claim for declaratory judgment serves no useful

purpose in light of the Counterclaim Defendants' claims for declaratory judgment and

damages for trademark infringement.  Indeed, the resolution of the Counterclaim

Defendants' trademark infringement claim necessarily resolves the Counterclaim

10

Plaintiffs' claim for declaratory judgment.  And if the Counterclaim Plaintiffs ultimately prevail, they may file a motion for attorney fees.  15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").  Therefore, the court, in its discretion, dismisses Count I of the Counterclaim.

**B.    Count II-IV, Indiana Franchise Act Claims, and Count V, Indiana Deceptive Franchise Practices Act Claim**

Counts II-IV of the Counterclaim allege claims under the IFA and Count V alleges a claim under the IDFPA.  The IFA and the IDFPA apply if the offeree or franchisee is an Indiana resident or the franchised business contemplated by the offer or franchise will be or is operated in Indiana.  Ind. Code §§ 23-2-2.5.2, 23-2-2.7-5.

Here, Wheatridge is an Indiana limited liability company with offices in Carmel, Indiana.  Thus, at first blush, the Acts would appear to apply to Wheatridge, the licensee.  However, as the Counterclaim Defendants point out, the Licensing Agreement between 7E Licensing and Wheatridge was for the operation of a 7E business utilizing the 7E trademarks in Colorado, not Indiana.  Therefore, they argue, Counts II-V of the Counterclaim must be dismissed because the IFA and the IDFPA apply only to franchises that conduct business in Indiana.  In support of their argument, the Counterclaim Defendants rely on *Wright-Moore Corp. v. Ricoh Corp.* 794 F. Supp. 844 (N.D. Ind. 1991).  There, the district court found that even if plaintiff were an Indiana franchisee and the defendant wrongfully failed to renew the franchise agreement, the IDFPA only applied to the plaintiff's Indiana franchise territory.  The court reasoned:

> [G]iving Indiana's franchise statute extraterritorial effect raises Commerce Clause issues. Statutes are to be construed, if possible, to avoid raising

11

constitutional questions. Furthermore, there is no mandate in the Act to apply it extraterritorially. Thus, even if [plaintiff] were able to convince the court that it is a franchisee under Indiana law and that the limitations on non-renewal apply to this case, the protection afforded by the act is limited to [plaintiff's] Indiana franchise territory.

*Id.* at 860-61 (internal citations omitted). In the absence of any applicable Indiana case law to the contrary, the court must find that Counterclaim Plaintiffs' 7E business is outside the territorial reach of the IFA and the IDFPA. Therefore, the court must dismiss Counts II-V of the Counterclaim for failure to state a claim.

### C.    Count VI, Breach of Covenant of Good Faith and Fair Dealing

Count VI alleges 7E Licensing and 7E Holdings have breached the covenant of good faith and fair dealing. The Counterclaim Defendants concede Dier Graf and Wheatridge have stated a claim against 7E Licensing based on representations regarding the Licensing Agreement and have stated a claim against 7E Holdings based on representations regarding the Operating Agreement. Accordingly, Count VI against 7E Licensing and 7E Holdings remains.

### D.    Count VII, Breach of the Implied Duty of Good Faith and Fair Dealing

Count VII alleges a claim for breach of the implied duty of good faith and fair dealing. Counterclaim Defendants argue that Indiana does not recognize such a claim "except in limited circumstances involving employment contracts and insurance contracts." *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). They are right to a point; the covenant of good faith is implied when a fiduciary relationship exists. *See Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003). As such, "a claim that an implied covenant of good faith and fair dealing has been

12

breached is really a claim of breach of fiduciary duty." *Id.* Counterclaim Plaintiffs brought a breach of fiduciary claim in Count XI. Therefore, the court will dismiss this claim as duplicative.

### E. Count VIII, Unjust Enrichment and Count IX, Promissory Estoppel

Count VIII alleges 7E Licensing and 7E Holdings were unjustly enriched as a result of the "implied" Licensing Agreement and the "implied" Operating Agreement. Count IX alleges 7E Licensing and 7E Holdings promised Dier Graf and Wheatridge that a 7E Fit Spa would generate a certain monthly income and profit, and in reliance on that promise, Dier Graf and Wheatridge opened a 7E Fit Spa to their detriment.

"To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Fiederlein v. Boutselis*, 952 N.E.2d 847, 858 (Ind. Ct. App. 2011). The doctrine of promissory estoppel provides that a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." Restatement (Second) of Contracts § 90(1); *Fiederlein*, 952 N.E.2d at 857-58. These claims permit recovery where no express contract exists. *Id.* at 857 (citing *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220-21 (Ind. 2009)). Based on the allegations of the Complaint, three contracts in fact exist—the Licensing Agreement, the Operating Agreement, and the Lease Agreement—and these contracts are filed as attachments to the Counterclaim. Therefore, Dier Graf and Wheatridge have

failed to state claims for relief under a theory of unjust enrichment and/or promissory estoppel.  Counts VIII and IX are therefore dismissed.

### F.    Count X, Tortious Interference with Business Relations

Count X alleges 7E Licensing and 7E Holdings tortiously interfered with Counterclaim Plaintiffs' business relationship with its 7E Fit Spa customers by, *inter alia*, intentionally misrepresenting the operational status of the spa, wrongfully taking the Counterclaim Plaintiffs' customer information, and intentionally inducing those customers to stop frequenting Dier Graf's/Wheatridge's 7E Fit Spa.  The elements of a claim for tortious interference are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship.  *Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000).  In addition, the defendant must have "acted illegally in achieving his end."  *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876-77 (Ind. Ct. App. 1998); *see also Beeching*, 729 N.E.2d at 222.

The Counterclaim Defendants argue the Counterclaim Plaintiffs have failed to allege any conduct by 7E Licensing and 7E Holdings that is illegal.  What constitutes illegal conduct has not been defined by courts; however, the Indiana Court of Appeals has held that defamation is not illegal conduct for purposes of a tortious interference with business relationship claim.  *Melton v. Ousley*, 925 N.E.2d 430, 436 (Ind. Ct. App. 2010); *Beeching*, 729 N.E.2d at 222-23; *see also Bradley v. Hall*, 720 N.E.2d 747, 751 n.3 (Ind.

14

Ct. App. 1999) (observing that "no court has defined the meaning of "illegal" as used in this context).

Here, Counterclaim Plaintiffs do not specifically allege illegal conduct on the part of 7E Licensing and 7E Holdings. Their allegations relating to customer interference— i.e., the Counterclaim Defendants and Mr. Nielsen misrepresented the operational status—may rise to the level of defamation. Defamation, however, is not illegal conduct. Count X must therefore be dismissed.

### G.    Count XI, Breach of Fiduciary Duty

In Count XI, the Counterclaim Plaintiffs seek to hold 7E Holdings and Mr. Nielsen liable for breach of various fiduciary duties arising out of the contractual relationship set forth in the Operating Agreement. 7E Holdings and Mr. Nielsen argue that a fiduciary duty may not be predicated on the existence of a contractual relationship. Therefore, they maintain they owed no fiduciary duties to them.

The Operating Agreement is between 7E Holdings and Wheatridge, both of which are limited liability companies. The Operating Agreement reflects that 7E Holdings is the majority member; Dier Graf is the minority member. (Operating Agreement § 2.1 at 2). Mr. Nielsen is the managing member of 7E Holdings and is a manager of Wheatridge. (*Id.* at 25). Under Indiana law, "common law fiduciary duties, similar to the ones imposed on partnerships and closely-held corporations, are applicable to Indiana LLCs." *Purcell v. S. Hills Inv., LLC*, 847 N.E.2d 991, 997 (Ind. Ct. App. 2006). Mr. Nielsen therefore owes a fiduciary duty to Wheatridge as a manager of Wheatridge and he owes a fiduciary duty to Dier Graf as the only other member and manager of

15

Wheatridge.  7E Holdings owes a fiduciary duty to Wheatridge as a majority member of

Wheatridge, and owes a fiduciary duty to Dier Graf as the other member and manager of

Wheatridge.  Accordingly, Count XI remains against 7E Holdings and Mr. Nielsen.

### H.    Count XII-XIV, Claims for Fraud

In Counts XII-XIV, Counterclaim Plaintiffs bring claims for fraud, fraud in the

inducement, and constructive fraud.  Counterclaim Defendants move to dismiss these

claims on three grounds:  (1) failure to state a claim against 7E Licensing and 7E

Holdings; (2) failure to plead fraud with particularity against 7E Licensing and 7E

Holdings; and (3) with respect to constructive fraud, failure to establish the existence of a

fiduciary relationship between the Counterclaim Plaintiffs and 7E Holdings.

A claim for fraud consists of five elements: (1) the defendant made at least one

representation of a past or existing fact; (2) the representation was false; (3) the

representation was made with knowledge of its falsity or reckless ignorance of its falsity;

(4) the plaintiff reasonably relied on the representation; and (5) the representation caused

harm to the plaintiff.  *Scott v. Bodor*, 571 N.E.2d 313, 320 (Ind. Ct. App. 1991).  Fraud in

the inducement occurs when a party is induced through fraudulent misrepresentations to

enter into a contract.  *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241

(Ind. Ct. App. 2002).

Statements of opinion or promises of future action cannot support an action for

fraud.  *Id.* at 320.  Furthermore, Indiana Trial Rule 9(B) states that all averments of fraud

must be pled with specificity as to the "circumstances constituting fraud."   This requires

the party asserting fraud to "specifically allege the elements of fraud, the time, place, and

substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud." *Payday Today, Inc. v. Hamilton*, 911 N.E.2d 26, 33 (Ind. Ct. App. 2009) (citing *Continental Basketball Ass'n, Inc. v. Ellenstein Enter.,* 669 N.E.2d 134, 138 (Ind. 1996)).

Here, Counterclaim Plaintiffs allege that in the fall of 2013, Dier Graf and Mr. Nielsen met in Colorado to discuss the possibility of her opening a 7E Fit Spa location in Wheat Ridge, Colorado.  Counterclaim Plaintiffs allege Mr. Nielsen knowingly misrepresented the profitability of a 7E Fit Spa, knowingly misrepresented that the business arrangement would be that of a licensor-licensee when in fact it was not, and knowingly misrepresented that 7E Licensing was the owner of the 7E FIT SPA™ trademark and the owner of the domain name registrations that incorporate the 7E FIT SPA™.  Counterclaim Plaintiffs allege that in reliance on those materially false representations, Dier Graf entered into an Operating Agreement, Licensing Agreement, and Lease Agreement in order to open a 7E Fit Spa that ultimately lost money, and she and Wheatridge were harmed as a result.  The court finds Counterclaim Plaintiffs have adequately stated claims of fraud and fraudulent inducement against 7E Licensing, 7E Holdings, and Mr. Nielsen with the requisite particularity.

A claim for constructive fraud consists of five elements:

(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Demming v. Underwood,* 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (quoting *Rice v. Strunk,* 670 N.E.2d 1280, 1284 (Ind. 1996)).  The plaintiff has the burden of proving the first and fifth elements.  *Id.* (citing *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. Ct. App. 2002), *aff'd on reh'g*, 781 N.E.2d 770 (Ind. Ct. App. 2003), *trans. denied*).  The duty mentioned in the first element may be established by the existence of a fiduciary relationship.  *Id.*  If the plaintiff meets the burden of proof with respect to these elements, the burden then shifts to the defendant to disprove at least one of the remaining three elements by clear and unequivocal proof.  *Id.*

7E Holdings and Mr. Nielsen maintain a fiduciary duty does not exist between them and the Counterclaim Plaintiffs.   The court has found, however, that Counterclaim Plaintiffs have stated a claim for relief for breach of fiduciary duty against 7E Holdings and Mr. Nielsen.  As this is the only objection posed by Counterclaim Defendants, Counterclaim Plaintiffs' constructive fraud claim remains as against 7E Holdings and Mr. Nielsen.

## IV.    Conclusion

For the reasons set forth above, the court **GRANTS in part** and **DENIES in part** the Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Counterclaim and Third Party Complaint (Filing No. 25).  Specifically, the court

- **GRANTS** Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Count I (declaratory judgment for trademark infringement), Count II-IV (IFA claims), Count V (IDFPA claim), VII (breach of the implied covenant of

18

good faith and fair dealing), VIII (unjust enrichment), IX (promissory estoppel, and X (tortious interference with business relations);

- **GRANTS** Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Count VI (breach of the covenant of good faith and fair dealing) against 7E LLC and Mr. Nielsen, and **DENIES** the Motion to Dismiss Count VI against 7E Licensing and 7E Holdings;

- **GRANTS** Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Count XI (breach of fiduciary duty) against 7E Licensing and 7E LLC and **DENIES** the Motion to Dismiss Count XI against 7E Holdings and Mr. Nielsen.

- **GRANTS** Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Counts XII-XIII (fraud and fraudulent inducement) against 7E LLC and **DENIES** the Motion to Dismiss Counts XII-XIII against 7E Licensing, 7E Holdings, and Mr. Nielsen; and

- **GRANTS** Counterclaim Defendants' and Third Party Defendant's Motion to Dismiss Count XIV (constructive fraud) against 7E Licensing and 7E LLC, and **DENIES** the Motion to Dismiss Count XIV against 7E Holdings and Mr. Nielsen.

In light of these rulings, 7E LLC is dismissed as a Counterclaim Defendant and The Full Body Shop d/b/a Medspa is dismissed as a Counterclaim Plaintiff. The Counterclaims that remain are:

- Count VI (breach of the covenant of good faith and fair dealing) against 7E Licensing and 7E Holdings;

- Count XI (breach of fiduciary duty) against 7E Holdings and Mr. Nielsen,

- Count XII (fraud) against 7E Licensing, 7E Holdings, and Mr. Nielsen;

- Count XIII (fraudulent inducement) against 7E Licensing, 7E Holdings, and Mr. Nielsen; and

- Count XIV (constructive fraud) against 7E Holdings and Mr. Nielsen.

**SO ORDERED** this 16th day of September 2016.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

20